UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANSDHER CIVIL and ADRIEL CAAMANO, on behalf of themselves and all others similarly situated, | Index No.:  18-cv-2256 |
| Plaintiffs, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| STARRETT CITY, INC., STARRETT CITY ASSOCIATES, L.P. AND GRENADIER REALTY CORP., | |
| Defendants. | |

Plaintiffs Ansdher Civil and Adriel Caamano ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through his undersigned counsel, alleges upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' Hourly Employees and investigation of his counsel), as follows:

## NATURE OF ACTION

1.     Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of Starrett City (a.k.a. Spring Creek Towers) ("Starrett City").  The Defendants in the action are: (i) Starrett City, Inc., ("Starrett Inc."); (ii) Starrett City Associates, L.P. ("Starrett Associates"); and (iii) Starrett City's managing agent, Grenadier Realty Corp. ("Grenadier" and together with Starrett Inc., and Starrett Associates, collectively, "Defendants") which, by virtue of their management and control over the wages and work of their Hourly Employees, are classified as "employers" under applicable labor law.

2.      Defendants operate Starrett City, a.k.a. Spring Creek Towers, which is a New York City housing community located in the Spring Creek (East New York) section of Brooklyn, New York and which contains 5,881 apartment units in 46 buildings and a privately owned and operated power plant, maintenance department and a private security force, and is said to be the largest federally assisted rental property in the United States. Defendants have approximately 15,000 residents and 200 current Hourly Employees.

3.      As particularized below, Defendants have engaged in illegal and improper wage practices that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.   These practices include: (a) improperly penalizing Hourly Employees by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing work as well as compensating Hourly Employees based only upon their scheduled hours rather than the actual time they clocked in and out; and (b) failing to include the nighttime pay differential for work in a higher job classification into the regular rate of pay, thereby resulting in overtime not computed at the proper time and one-half rate required.   Furthermore, Defendants failed to provide Hourly Employees with appropriate pay rate acknowledgement forms and weekly wage statements.   These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.   For these reasons, Plaintiffs bring this action on behalf of themselves and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et. Seq.,* and under McKinney's Labor Law (the "NYLL"), §§ 190, *et. seq.,* 195(1), 195(3), §§ 650, *et seq.,* and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

5.      This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

**Plaintiffs**

8.      Plaintiff, Ansdher Civil, is currently a resident of Jamaica, New York and is a current employee of Defendants.  Mr. Civil is a current employee of Starrett City and has been employed on a full-time basis since September 30, 2013 as an Hourly Employee and paid an hourly rate between $19.20 and $25.29.  Throughout his employment, Mr. Civil has been employed as a Peace Officer.  Additionally, throughout his employment, Mr. Civil was a full-time employee and scheduled to work from 4:00 p.m. until 12:00 a.m., 5 days per week.  His job duties as a Peace Officer include, among other tasks: 1) responding to emergencies in and around Starrett City and

Starrett City's facilities; 2) performing patrols of the Starett City grounds and facilities; 3) patrolling Starrett City's grounds and facilities at a fixed post; and 4) attending meetings with supervisors.  As a Peace Officer, Mr. Civil cannot not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works.  Mr. Civil cannot hire or fire other Hourly Employees. Mr. Civil also cannot pick and choose a particular post to patrol during any of his given, but rather is assigned a particular post by his supervisors.  Despite this lack of independent discretion, throughout the entirety of his employment as Peace Officer, Mr. Civil was not properly compensated for all hours worked.  Specifically, throughout Mr. Civil's employment, he was asked to and did perform essential work in between when he clocked in and the beginning of his scheduled shift as well as in between the end of his scheduled shift and when he clocked out.  By way of example, nearly every day throughout the course of his employment,, Mr. Civil clocked in between 10 to 15 minutes prior to the start of his scheduled shift and immediately began performing job-related duties, but his time was rounded and he was compensated as if he began work at 4:00 p.m. Additionally, on those same occasions, Mr. Civil would typically clock out between 5 to 10 minutes after the end of his scheduled shift and would perform work during this post-shift interval. However, his time was rounded and he was compensated as if he clocked out at 12:00 a.m.  On these days, Mr. Civil worked but was not compensated for at least 15-25 minutes because of Defendants' improper schedule-based time rounding procedures.  Mr. Civil was engaged in essential and integral work on the Defendants' behalf during this and all other pre- and post-shift schedule-based time rounding periods in which he was clocked in but not compensated.  Work performed during the pre- and post-shift schedule-based rounding periods include some or all the job duties referenced *supra*.  This pre- and post-shift work was significant, integral and indispensable to the performance of job related duties, was

4

not a *de minimis* task or request and was predominantly for the Defendants' benefit. This pre/post shift work occurred 4-5 times per week for anywhere between 15 – 25 minutes per day. Furthermore, Mr. Civil received premium pay at the nighttime differential rate for every 4:00 p.m. – 12:00 a.m. shift he worked, which occurred at least 3 –4 times per month from March 31, 2014 through the present.  Work performed during shifts in which Mr. Civil received the nighttime differential rate includes those duties described *supra*.  By way of example, during the pay period of June 29, 2015 to July 9, 2015, Mr. Civil worked a nighttime differential shift and accumulated at least .75 hours of overtime during that period but was not paid overtime wages calculated at a reflective rate of his actual straight wages inclusive of the nighttime pay differential.  Additionally, Mr. Civil's supervisors knew he was performing work during periods of improper pre- and post-shift time rounding but did nothing to rectify the situation or compensate Mr. Civil for his time. Supervisors with knowledge of Mr. Civil's uncompensated work include but are not limited to: Louis Justice (Sergeant), Rodney Boyd (Ct.), and Kelvin Roa (Sergeant).  Thus, because of Defendants' improper time-rounding and overtime compensation policies and as described more fully below, Mr. Civil was deprived of wages as required by the FLSA and NYLL, including at least 1.42 – 2.42 hours of uncompensated overtime per week.  Finally, Defendants never provided Mr. Civil with proper pay rate acknowledgement forms at the commencement of his employment and when he received a change in his hourly rate of pay as required under NYLL §195(1), nor was he provided with appropriate weekly wage statements as required by NYLL §195(3).

9.      Plaintiff, Adriel Caamano, is currently a resident of Bronx, New York and is a current employee of Defendants. Mr. Caamano is a current employee of Starrett City and has been employed on a full-time basis since March 31, 2014 as an Hourly Employee and paid an hourly rate between $19.20 and $25.29.  Throughout his employment, Mr. Caamano has been employed

as a Peace Officer.  Additionally, throughout his employment, Mr. Caamano was a full-time employee and scheduled to work from 4:00 p.m. until 12:00 a.m., 5 days per week.  His job duties as a Peace Officer include, among other tasks: 1) responding to emergencies in and around Starrett City and Starrett City's facilities; 2) performing patrols of the Starett City grounds and facilities; 3) patrolling Starrett City's grounds and facilities at a fixed post; and 4) attending meetings with supervisors.  As a Peace Officer, Mr. Caamano cannot not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works.  Mr. Caamano cannot hire or fire other Hourly Employees. Mr. Caamano also cannot pick and choose a particular post to patrol during any of his given, but rather is assigned a particular post by his supervisors.  Despite this lack of independent discretion, throughout the entirety of his employment as Peace Officer, Mr. Caamano was not properly compensated for all hours worked.  Specifically, throughout Mr. Caamano's employment, he was asked to and did perform essential work in between when he clocked in and the beginning of his scheduled shift as well as in between the end of his scheduled shift and when he clocked out.  By way of example, nearly every day throughout the course of his employment, Mr. Caamano clocked in between 10 to 15 minutes prior to the start of his scheduled shift and immediately began performing job-related duties, but his time was rounded and he was compensated as if he began work at 4:00 p.m. Additionally, on those same occasions, Mr. Caamano would typically clock out between 5 to 10 minutes after the end of his scheduled shift and would perform work during this post-shift interval. However, his time was rounded and he was compensated as if he clocked out at 12:00 a.m.  On these days, Mr. Caamano worked but was not compensated for at least 15-25 minutes because of Defendants' improper schedule-based time rounding procedures.  Mr. Caamano was engaged in essential and integral work on the Defendants' behalf during this and all other pre- and post-shift schedule-based time

rounding periods in which he was clocked in but not compensated. Work performed during the pre- and post-shift schedule-based rounding periods include some or all the job duties referenced *supra*. This pre- and post-shift work was significant, integral and indispensable to the performance of job related duties, was not a *de minimis* task or request and was predominantly for the Defendants' benefit. This pre/post shift work occurred 4-5 times per week for anywhere between 15 – 25 minutes per day. Furthermore, Mr. Caamano received premium pay at the nighttime differential rate for every 4:00 p.m. – 12:00 a.m. shift he worked, which has occurred at least 3 – 4 times per month from March 31, 2014 through the present. Work performed during shifts in which Mr. Caamano received the nighttime differential rate includes those duties described *supra*. By way of example, during the pay period of April 10, 2017 to April 16, 2017, Mr. Caamano worked a nighttime differential shift and accumulated 8.00 hours of overtime during that period but was not paid overtime wages calculated at a reflective rate of his actual straight wages inclusive of the nighttime pay differential. Additionally, Mr. Caamano's supervisors knew he was performing work during periods of improper pre- and post-shift time rounding but did nothing to rectify the situation or compensate Mr. Caamano for his time. Supervisors with knowledge of Mr. Caamano's uncompensated work include but are not limited to: Louis Justice (Sergeant), Rodney Boyd (Ct.), and Kelvin Roa (Sergeant). Thus, because of Defendants' improper time-rounding and overtime compensation policies and as described more fully below, Mr. Caamano was deprived of wages as required by the FLSA and NYLL, including at least 1.42 – 2.42 hours of uncompensated overtime per week. Finally, Defendants never provided Mr. Caamano with proper pay rate acknowledgement forms at the commencement of his employment and when he received a change in his hourly rate of pay as required under NYLL §195(1), nor was he provided with appropriate weekly wage statements as required by NYLL §and 195(3).

**Defendants**

10.     Starrett, Inc., Starrett Associates and Grenadier are privately held companies conducting business in the Eastern District of New York.  All three were established and incorporated under the laws of New York and are headquartered in New York.

11.     Starrett, Inc. owns and operates Starrett City (aka Spring Creek Towers), located in East New York, New York. Starrett City is the largest federally assisted rental housing development in the world.  Starrett, Inc. manages approximately 5,881 residential units located in 46 high-rise buildings.  Starrett City also contains a shopping center, various commercial offices, a parking facility, a self-sufficient and privately maintained electric generating power plant, and various recreational and community facilities.  Starrett City has over 200 current Hourly Employees, including its own police force, and is home to approximately 15,000 individuals.

12.     Starrett Associates is an entity made up of a group of investors who own the Starrett City, a.k.a. Spring Creek Towers housing complex.

13.     According to its website, Grenadier "provides a full range of real estate management services, including on-site administration, accounting, maintenance, procurement, capital budgeting and owner and resident initiatives/resident relations programs.  Grenadier manages and provides technical assistance to a variety of properties including government-assisted housing, public housing, condominiums, cooperatives, luxury rental units and rent stabilized rental unites."  Grenadier is the exclusive property manager for all the residential and commercial space in Starrett City.

14.     Starrett, Inc., Starrett Associates and Grenadier are related organizations through, among other things, common membership, governing bodies, trustees and/or officers and benefit plans.  Defendants also share common management and have common ownership.

8

15.     The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  As such, Defendants had the power to control wage policies and practices through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices. Thus, Defendants are the joint employers of Plaintiffs and class members within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

**Background**

16.     Defendants have over 200 current Hourly Employees.  Each Hourly Employee is assigned to a specific department within Starrett City, including but not limited to Maintenance, Purchasing, Allocations, Human Resources, Community Center, Senior Center, Youth Center, Garage, Accounting, Public Safety and Power Plant.

17.     Defendants hired Plaintiffs and promised to pay hourly wages for their work.  Full-time Hourly Employees are paid hourly wages based upon their job description and tenure that range between minimum wage between approximately $19.00 and $25.00 per hour and have a standard work week of 40 hours.

18.     Hourly Employees are required to clock in when they arrive at work and clock out when they leave for the day.  The time-keeping system and the procedures for using it are the same in each department.

*Subclass 1*
**Defendants' Time-Keeping System Is Configured to Improperly Penalize Hourly Employees When They Have Clocked In Before The Beginning Of Their Shift Or After The End Of Their Shift**

19.      Defendants have a policy and practice of unlawfully penalizing Hourly Employees

who clock-in and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they clock-out. Defendants will automatically penalize an Hourly Employee by rounding their clock in time to the beginning or end of their scheduled shift start time, even though they are performing job-related duties between when they have actually clocked in/out and when they are scheduled to work. These job-related duties are performed at the request of Chiefs, Supervisors, Directors and other superiors who know that Hourly Employees will not be paid for this time and instruct Hourly Employees to begin or complete tasks within the unpaid schedule-based rounding window. For example, if an Hourly Employee is scheduled to end his shift at 5:00 p.m., and he clocks out at 5:10 p.m., he is paid only until 5:00 p.m. even though he is performing work related duties during that uncompensated 10 minute interval. Similarly, if an Hourly Employee is scheduled to start his shift at 8:00 a.m. and he clocks in at 7:50 a.m., he is paid starting at 8:00 a.m. even though he is performing work-related duties during that uncompensated 10-minute interval. Consequently, if an Hourly Employee is scheduled to begin his shift at 8:00 a.m. and he clocks in at 8:04 a.m., he is not given the benefit of being compensated from 8:00 a.m. but rather he is paid from 8:04 a.m. forward. Similarly, if an Hourly Employee is scheduled to end his shift at 5:00 p.m. and he clocks out at 4:55 p.m., he is not given the benefit of being compensated until 5:00 p.m. but rather he is paid only up until he clocks out at 4:55 p.m. Although they request and are aware of the work Hourly Employees perform during these penalty periods, Defendants have knowingly configured their time keeping system to deny compensating Hourly Employees for some – if not all – of this unlawful schedule-based rounding time spent on the Defendants' behalf by systematically rounding down the Hourly Employees' total time worked.

20.    "Rounding" practices are permissible under the FLSA and NYLL if the

"arrangement averages out so that the Hourly Employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). This practice is accepted provided that the time rounding is used in such a manner that will not, over a period of time, result in the failure to compensate Hourly Employees properly for all the time they have actually worked. Defendants are aware of permissible rounding practices under the FLSA and NYLL. However, despite their knowledge of permissible rounding practices and knowing that its time keeping software works only to the benefit of the Defendants and to the detriment of the Hourly Employees, the Defendants have never conducted an analysis to determine whether the Defendants' time clock system averages out – which it does not. As such, Defendants' schedule-based rounding practice unfairly favors Defendants versus the Hourly Employees subject to the schedule-based rounding policy. This rounding policy consistently and artificially reduces the total time Hourly Employees are credited with working at Defendants facilities.

21.    Accordingly, Plaintiffs Ansdher Civil and Adriel Caamano, seek certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective) or six years (New York Class) preceding the filing of this action and were improperly penalized by Defendants' schedule-based time rounding system if they clocked in or out before and/or after the end of their scheduled shift, even though they performed work related duties during this uncompensated time window and who were: (a) not compensated for all work performed while clocked-in; and/or (b) were not fully compensated for time worked over forty hours per week at overtime rates ("FLSA Collective Subclass 1" and "New York Subclass 1").

**Subclass 2:**
**Defendants Did Not Include Additional 'Premium Pay' In Hourly Employees' Straight Wages When Calculating Hourly Employees' Overtime Compensation Rate**

22.    Defendants have a policy and practice of calculating overtime compensation rates

without factoring in the 'premium pay' rate or nighttime differential rate that Hourly Employees earn for working straight and overtime hours during night shifts. Hourly Employees are required to be paid for all overtime hours at a rate of not less than one and one-half times their regular rate of pay. Any amounts paid to the Hourly Employee, including night shift 'premium pay', must be included in an Hourly Employee's regular rate of pay by which that Hourly Employee's overtime rate is calculated.

23.    Defendants pay Hourly Employees who work applicable shifts a nighttime differential rate. However, Defendants do not factor in this premium pay rate when calculating overtime compensation. Defendants have a policy and practice of paying non-exempt Hourly Employees overtime at a rate of one and one-half times their straight wages before they earn premium pay in any given week. As such, Hourly Employees who are paid overtime and earn premium pay at the nighttime differential rate are not compensated at a rate that is reflective of one and one-half times their actual straight wage.

24.    Accordingly, Plaintiffs Ansdher Civil and Adriel Caamano seek certification of the following subclass of Hourly Employees:

> All hourly paid non-exempt Hourly Employees who worked at the Defendants' facility in New York, who are or were employed within the three years (FLSA Collective Subclass) or six years (New York Subclass) preceding the filing of this action by Defendants and who earned wages at the 'premium pay' rate but were improperly paid overtime based on their straight wages not inclusive of any earned 'premium pay' and thus not fully compensated for time worked over forty hours per week at properly calculated overtime rates ("FLSA Collective Subclass 2" and "New York Subclass 2").

## Defendants Exercise Control Over Starrett City's Wage Policies and Practices

25.    Defendants have the power to control Starrett City's wage policies and practices

through their oversight and management of day-to-day operating procedures, control over employee work schedules, negotiation of employee collective bargaining agreements ("CBA's"), ability to determine employees' rate of pay and ability to control Starrett City's record and time keeping practices.  For example, Defendants have negotiated contracts with vendors regarding Starrett City's purchase of facility-wide supplies and services.  Grenadier also has an exclusive management contract with Starrett, Inc. and/or Starrett Associates to perform management duties over both Starrett City's properties and Starrett City's employees.

26.    By virtue of their positions, roles and conduct as described above, Starrett, Inc., Starrett Associates and Grenadier are "employers" under the FLSA.

**Defendants Failed To Provide Hourly Employees With Timely
And Appropriate Wage Statements and Pay Rate
Acknowledgement Forms As Required Under NYLL**

27.    Defendants failed to provide Plaintiffs, Ansdher Civil and Adriel Caamano, and all other Hourly Employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

28.    Defendants failed to provide Plaintiffs, Ansher Civil and Adriel Caamano and all other Hourly Employees at the time of hiring and when they received a change in their hourly rate of pay , a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid  by the hour, shift, day, week, salary, piece,

commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

### <u>FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS</u>

29.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

30.     Plaintiffs, Ansher Civil and Adriel Caamano, bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Subclass 1 and FLSA Collective Subclass 2.

31.     Excluded from the FLSA Collective Subclasses are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Starrett, Inc., Starrett Associates or Grenadier.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Subclasses.

32.     Plaintiffs are unable to state the exact number of Hourly Employees within the Collective Subclasses without discovery of Defendants' books and records but estimates that the subclasses exceeds 200 individuals.

33.     Defendants improperly benefited from Plaintiffs' and the FLSA Collective Subclasses members' uncompensated work during schedule-based rounding periods and off-the-clock work.

34.     Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Subclasses.

35.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Subclasses, and, as such, notice should be sent to the FLSA Collective. There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

36.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

37.     Plaintiffs, Ansdher Civil and Adrial Caamano, bring this action on their own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Subclass 1 and New York Subclass 2.

38.     Excluded from the New York Subclasses are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Starrett, Inc., Starrett Associates and Grenadier.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Subclasses.

39.     Defendants operate and manage the largest federal assisted rental housing development in the United States, employing over 200 Hourly Employees in New York State and they systematically fail and refuse to pay their Hourly Employees for all compensable hours

worked.  The members of the New York Subclasses are so numerous that joinder of all members in one proceeding is impracticable.

40.    Plaintiffs' claims are typical of the claims of other New York Subclasses members because Plaintiffs are non-exempt hourly-wage Hourly Employee who have not been compensated for work performed at the employer's request once they had clocked before their scheduled shift and before they clocked out after their scheduled shift or for their off-the-clock work.  Plaintiffs and other New York Subclasses members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and other New York Subclasses members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

41.    Plaintiffs will fairly and adequately protect the interests of the New York Subclasses.   Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiffs and the New York Subclasses.

42.    Common questions of law and fact exist as to the New York Subclasses that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

      (a)    Whether Defendants failed and/or refused to pay Plaintiffs and the New York Class for all of the compensable time that they worked for Defendants while clocked-in;

      (b)    Whether Defendants failed and/or refused to pay Plaintiffs appropriate overtime rates for shifts in which they worked and were entitled to nighttime premium pay;

      (b)    Whether Defendants failed to keep true and accurate time records for all

hours worked by their Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

(c)    Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

(d)    Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

(e)    Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

(f)    Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiffs and New York Class members to perform work for Defendants' benefit which was not compensated;

(g)    Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h)    The nature and extent of class-wide injury and the measure of damages for those injuries.

43.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered

in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the New York Subclasses are readily identifiable from Defendants' own records.

44.    Prosecution of separate actions by individual members of the New York Subclasses would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Subclasses that would establish incompatible standards of conduct for Defendants.

45.    Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the New York Subclasses.

46.    Plaintiffs intend to send notice to all members of the New York Subclasses to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(On Behalf of Plaintiffs, Ansdher Civil and Adriel Caamano, and the FLSA Collective Subclasses)**

47.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

48.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiffs and each of the members of the FLSA Collective.

49.    Plaintiffs consent in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiffs' Opt-in forms. As this case

18

proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs and opt-ins.

50.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

51.     Plaintiffs and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

52.     Defendants, pursuant to their policies and practices, failed and refused to pay minimum wage and overtime premiums to Plaintiffs and the members of the FLSA Collective Subclasses for all of their hours worked.

53.     By failing to compensate Plaintiffs and the members of the FLSA Collective Subclasses for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

54.     By improperly rounding FLSA Collective time entries, Defendants have violated, and continue to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

55.     By improperly offering private sector Hourly Employees comp time in lieu of overtime compensation, Defendants have violated, and continue to violate 29 U.S.C. § 207(o).

56.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

57.     Plaintiffs, on behalf of themselves and members of the FLSA Collective Subclasses, seeks damages in the amount of their unpaid wages and overtime compensation,

interest, and such other legal and equitable relief as the Court deems just and proper.

58.     Plaintiffs, on behalf of themselves and the FLSA Collective Subclasses, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiffs, Ansdher Civil and Adriel Caamano and the New York Subclasses)**

59.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

60.     Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiffs and the New York Subclasses in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

61.     Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiffs' and the New York Subclasses' wages that concern this lawsuit.

62.     Defendants were not authorized by Plaintiffs or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

63.     Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

64.     Defendants have violated the New York Labor Law by failing to pay Plaintiffs and

the members of the New York Subclasses for all compensable time and by failing to pay Plaintiffs and the members of the New York Subclasses for the straight time worked at the established rate.

65.     Plaintiffs, on behalf of herself and the New York Subclasses, seeks the amount of underpayments based on Defendants failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

66.     Plaintiffs, on behalf of themselves and the New York Subclasses, seeks all liquidated and punitive damages and penalties available under the NYLL.

### THIRD CAUSE OF ACTION

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff, Ansdher Civil and Adriel Caamano, and the New York Subclasses)**

67.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

68.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiffs and the members of the New York Subclasses.

69.     Defendants have failed to pay Plaintiffs and members of the New York Subclasses overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

70.     By Defendants' knowing and/or intentional failure to pay Plaintiffs and the members of the New York Subclasses overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

71.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the New York Subclasses are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

72.    Plaintiffs, on behalf of themselves and the New York Subclasses seeks all liquidated and punitive damages and penalties available under the NYLL.

## FOURTH CAUSE OF ACTION

**New York Labor Law – Violation of the Notice and Recordkeeping Requirements
(On Behalf of Plaintiffs, Ansdher Civil and Adriel Caamano, and the New York Subclasses)**

73.    The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

74.    Defendants have failed to provide Plaintiffs and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

75.    Defendants are liable to Plaintiffs and each Hourly Employee in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

**New York Labor Law – Violation of the Wage Statement Provisions
(On Behalf of Plaintiffs, Ansdher Civil and Adriel Caamano, and the New York Subclasses)**

76.    The preceding paragraphs are incorporated by reference as if the same were fully

set forth herein.

77.    Defendants have not provided Plaintiffs and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

78.    Defendants are liable to Plaintiffs and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Ansdher Civil and Adriel Caamano, individually and on behalf of the FLSA Collective, seeks the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs, Ansdher Civil and Adriel Caamano, as the Representatives of FLSA Collective Subclass 1;

C.    Designation of Plaintiffs, Ansdher Civil and Adriel Caamano, as the Representatives of FLSA Collective Subclass 2;

23

D.      Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective Subclasses;

E.      An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendants;

F.      An award of costs incurred herein, including expert fees;

G.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

H.      An award of pre-judgment and post judgment interest, as provided by law;

I.      An award of injunctive relief to prevent against future wage and hour violations; and

J.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiffs, Ansdher Civil and Adriel Caamano, individually and on behalf of the New York Class, seek the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiffs' counsel as Lead Counsel for the New York Subclasses;

B.      Designation of Plaintiffs, Ansdher Civil and Adriel Caamano, as the Representative of New York Subclass 1;

C.      Designation of Plaintiffs, Ansdher Civil and Adriel Caamano, as the Representative of New York Subclass 2;

D.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1.      An award to Plaintiffs and members of the New York Subclasses of damages for the amount of unpaid straight wages in addition to interest subject to proof;

2.      An award to Plaintiffs and the members of the New York Subclasses of

24

reasonable attorneys' fees and costs pursuant to New York Labor Law;

    D.    On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

    1.    An award to Plaintiffs and the members of the New York Subclasses of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

    2.    An award to Plaintiffs and the members of the New York Subclasses of reasonable attorneys' fees and costs pursuant to New York Labor Law.

    E.    On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

    1.    An award to Plaintiffs and members of the New York Subclasses of damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

    2.    An award to Plaintiffs and the members of the New York Subclasses of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs and Plaintiffs' employment, to Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work

related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated:         New York, New York
               April 17, 2018

                                   _____/s/ Lee S. Shalov_____
                                   Lee S. Shalov (LS-7118)
                                   Brett Gallaway (BG-1053)
                                   Wade C. Wilkinson (WW-1679)
                                   McLAUGHLIN & STERN, LLP
                                   260 Madison Ave.
                                   New York, NY 10016
                                   Telephone: (212) 448-1100
                                   lshalov@mclaughlinstern.com
                                   bgallaway@mclaughlin.com
                                   wwilkinson@mclaughlinstern.com

                                   *Attorneys for Plaintiff, the FLSA Collective and the New York Class*