UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANSDHER CIVIL and ADRIEL CAAMANO, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>     v.<br><br>STARRETT CITY, INC., STARRETT CITY ASSOCIATES, L.P. and GRENADIER REALTY CORP.,<br><br>                      Defendants. | Index No.: 18-cv-2256(FB)(PK) |

## THE PARTIES' JOINT MOTION FOR
## FINAL APPROVAL OF SETTLEMENT

Lee S. Shalov, Esq.
Brett R. Gallaway, Esq.
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
212-448-1100

*Attorneys for Plaintiffs*

{N0037208.1}

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

    A.  Overview of the Litigation.................................................................................... 3

    B.  Discovery and Settlement Negotiations................................................................ 4

    C.  The Parties' Joint Motion for Preliminary Approval ............................................ 5

SUMMARY OF SETTLEMENT TERMS.......................................................................... 5

    A.  The Settlement Fund ............................................................................................ 5

    B.  Class Members...................................................................................................... 6

    C.  Releases................................................................................................................ 6

    D.  Allocation Formula .............................................................................................. 6

    E.  Attorneys' Fees, Costs and Service Awards ........................................................ 7

    F.  Settlement Claims Administration ........................................................................ 8

ARGUMENT ...................................................................................................................... 8

    A.  The Settlement Class Meets the Legal Standards for Class Certification .......... 8

    B.  The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate and Should be Approved in All Respects ................................................................. 9

        1.  The Settlement is Procedurally Fair................................................................ 9

        2.  The Settlement is Substantively Fair ............................................................ 11

            i.  Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) .................................................................................. 12

            ii.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ................... 13

            iii.  Discovery Has Advanced Far Enough to Allow The Parties To Resolve The Case (*Grinnell* Factor 3) ............................................................. 15

            iv.  Plaintiffs Would Face Substantial Risks If The Case Proceeded (*Grinnell* Factors 4 and 5)......................................................................... 16

            v.  Maintaining The Class Through Trial Would Be Difficult (*Grinnell* Factor 6) 17

            vi.  The Settling Entities' Ability To Withstand A Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ........................................................... 18

            vii.  The Settlement Fund Is Substantial in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ................... 18

    C.  The Plan of Allocation is Fair and Reasonable................................................. 19

    D.  Approval of the Settlement of the FLSA Class Members' Claims is Appropriate........... 21

CONCLUSION.................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................... 21

*Ballinger v. Advance Magazine Publrs., Inc.*,
    2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ..................................... 18

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................... 21

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ....................................... 12

*Cagan v. Anchor Sav. Bank FSB*,
    1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990) ...................................... 19

*Capilupi v. People's United Fin., Inc.*,
    2018 U.S. Dist. LEXIS 167550 (E.D.N.Y. Sept. 27, 2018) .............................. 12, 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................ passim

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................................................... 9

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................................................................. 14

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................ 18

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012) ................................. 16, 17

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................... 9

*In re American Banknote Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 20

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 12, 15, 18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................................... 10

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. Feb. 12, 2010) .............................................. 10, 19

*In re Paine Webber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ................................................................................ 9

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................... 20

*Johnson v. Brennan*,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ................................ 17

*Karic v. Major Auto. Cos.*,
    2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) .............................. 12, 19

*Kochilas v. Nat'l Merch. Servs.*,
    2015 U.S. Dist. LEXIS 135553 (E.D.N.Y. Oct. 2, 2015) ............................... 11, 14

*Lizondro-Garcia v. Kefi LLC*,
    2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014) ................................ 9, 21

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 13

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) .......................................................................... 21

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................................................. 18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ............................................................................. 18

*Sewell v. Bovis Lend Lease LMB, Inc.*,
    2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012) ............................... 15, 16

*Slomovics v. All for a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ................................................................... 13

*Spann v. AOL Time Warner Inc.*,
    2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) ...................................... 9

*Toure v. Amerigroup Corp.*,
    2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) .................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................................. 9, 10

*Westerfield v. Washington Mut. Bank*,
  2009 U.S. Dist. LEXIS 54553 (E.D.N.Y. June 26, 2009) ....................................................... 10

*Weston v. TechSol, LLC*,
  2018 U.S. Dist. LEXIS 166574 (E.D.N.Y. Sept. 26, 2018)...................................................... 10

*Willix v. Healthfirst*,
  2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011)......................................................... 15

*Wollinsky v. Scholastic, Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012)..................................................................................... 21

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ........................................................ 11

**Statutes**

Fair Labor Standards Act ................................................................................................. passim

Fed. R. Civ. P. 23 ............................................................................................................ passim

New York Labor Law ............................................................................................................. 3

**Other Authorities**

4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS  (4th ed.
  2002) .................................................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiffs and the Settling Entities are pleased to present to the Court for final approval a $4.75 million Settlement for the benefit of hourly-paid, non-exempt employees at Starrett City.[1] By this Joint Motion for Judgment and Final Approval, the Parties seek an Order: (a) certifying the Classes for settlement purposes; (b) approving the Settlement and the Settlement Agreement as final, fair, reasonable, and adequate; and (c) entering judgment in accordance with the Settlement Agreement.  As demonstrated below, the Settlement satisfies all criteria for final approval.

Indeed, as described in the accompanying Declaration of Lee S. Shalov (the "Shalov Dec."), the Settlement—which will provide substantial all-cash payments to non-exempt hourly employees for wages they allegedly did not receive while working at the Settling Entities' facilities in Starrett City—was negotiated only after extensive investigation, discovery, and motion practice engaged in by Class Counsel.  These efforts included, *inter alia*, review of thousands of pages of the Settling Entities' documents and payroll records; successfully arguing and opposing the Starrett Defendants' motion to stay discovery pending their motion to dismiss; successfully arguing against the Starrett Defendants' efforts to limit the proposed class to just those employees who utilized electronic (as opposed to paper) time keeping procedures; engaging in lengthy negotiations with regard to a "phased" discovery plan, which was approved by the Court by Order dated November 14, 2018; opposing Starrett Defendants' motion to dismiss and compel arbitration; and communicating with numerous Class Members regarding their work experiences at Starrett City.  The Settlement was also overseen by an experienced wage-and-hour mediator, Martin F. Scheinman, Esq., during an all-day and arm's-length mediation session at which

---

[1]        Unless otherwise defined, all capitalized terms shall have the same meaning as used in the Joint Stipulation of Settlement and Release (a/k/a the "Settlement Agreement") (Dkt. No. 56).

Plaintiffs and the Starrett Defendants narrowed and ultimately resolved the significant differences they had regarding the claims and defenses at issue in the litigation.  Class Counsel thereafter engaged in multiple rounds of arms'-length negotiations with Purchaser, resulting in an agreement to settle Plaintiffs' post-May 7, 2018 claims in the amount of $250,000, for a collective settlement on behalf of all Class Members in the amount of $4.75 million.  Accordingly, the Settlement satisfies the indicia for "procedural fairness" under controlling authority.

The Settlement also meets the requirements for finding "substantive fairness."  Far from a "run-of-the-mill" FLSA collective action, this litigation involved complex issues on a number of fronts, including the certifiability of "schedule-based" claims involving approximately 1,000 employees with purportedly varied work experiences, and the Court's jurisdiction to hear wage claims by employees arguably subject to collective bargaining agreements that required wage disputes to be arbitrated.  The litigation also presented innumerable risks at the time the Settlement was reached, including the risk that the Starrett Defendants' then-pending motion to dismiss the Complaint would be granted; that even if Plaintiffs prevailed on the Starrett Defendants' motion to dismiss, the Court would ultimately deny Plaintiffs' anticipated motion for class certification; that the Starrett Defendants would seek to decertify any certified class on the grounds that Class Members performed their duties differently depending on where they worked, who supervised them, and other factors; that factual disputes would preclude summary judgment, thereby resulting in a fact-intensive trial; and that the trier of fact would ultimately determine that Plaintiffs were paid for all hours worked and were not entitled to any further compensation.

As described below,[2] the $4.75 million recovery is substantial in light of the best possible recovery in and the attendant risks of the Litigation.  The recovery here is extremely favorable

---

[2]    *See* Argument, Part B.2.vii, discussing *Grinnell* Factors 8 and 9.

{N0037208.1}                                           2

when compared to the best possible outcome achievable had Plaintiffs succeeded on all their claims at trial, *to wit*, $29,454,023 (a sum that includes punitive damages over the 6-year NYLL statutory period, WTPA penalties for alleged NYLL § 195.1 and § 195.3 violations, damages for alleged unpaid "spread-of-hours" violations, interest and attorneys' fees), and even more impressive when compared to the $8,163,668 in alleged compensatory damages sustained by members of the Class.  Indeed, 514 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 387 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement Fund, and 98 Class Members can expect to receive more than $10,000 from the Net Settlement Fund.  Confirming the outstanding nature of the recovery, not one Class Member has registered an objection to the Settlement.

For the foregoing, reasons, as demonstrated more fully below, the Parties respectfully submit that the Settlement is fair and reasonable and should be approved in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of the Litigation

On April 17, 2018, Plaintiffs filed their class and collective action Complaint alleging, *inter alia*, that the Starrett Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and New York Labor Law, Article 6, §§ 190 *et seq.*, Article 19, §§ 650 *et seq.* (the "NYLL"), and 12 NYCRR § 142-2, by denying straight and overtime compensation to Plaintiffs by paying them according to their scheduled shifts rather than the actual time they spent clocked in and performing work-related duties.  *See* Dkt. No. 1.  On September 13, 2018, soon after the filing of the Complaint, the Starrett Defendants filed a letter motion seeking a stay of discovery in the Litigation.  *See* Dkt. No. 26.  Class Counsel successfully opposed that request, which was denied by Magistrate Judge Peggy Kuo at a hearing held on October 12, 2018.

Thereafter, on October 19, 2018, the Starrett Defendants requested permission to and did move for dismissal of the Complaint, asserting, *inter alia*, that Plaintiffs had failed to sufficiently particularize their allegations of unpaid compensation or, alternatively, that Plaintiffs' claims were subject to arbitration. *See* Dkt. No. 18. Plaintiffs submitted their opposition to the Starrett Defendants' motion to dismiss, but prior to the due date for the Starrett Defendants' reply in further support of same, the parties were able to successfully resolve the matter through the use of an experienced private mediator, as described below.

**B.    Discovery and Settlement Negotiations**

While discovery was ongoing and prior to the Court ruling on the Starrett Defendants' then-pending motion to dismiss, Class Counsel and counsel for the Starrett Defendants conferred and agreed to engage a private mediator to explore settlement of the claims asserted in the Complaint. *See* Shalov Dec. at ¶ 11. In furtherance of that agreement, counsel retained Martin F. Scheinman, Esq., an experienced and well-respected employment wage-and-hour mediator. *Id.* In anticipation of mediation, the Starrett Defendants provided Plaintiffs with Class Member payroll data, including salary and workweek data. *Id.* at ¶ 12. Class Counsel then forwarded the payroll data to its economics and statistics expert, EmployStats, who "cleaned" those records through a statistical software program and presented each employee's damages via punch detail information in spreadsheets comparing the amount of time an employee was punched in during a particular day with the duration of the employee's shift. *Id.*

An all-day mediation session was held on March 14, 2019, at which Class Counsel and counsel for the Starrett Defendants reached agreement on the material terms of a settlement in the amount of $4.5 million. *Id.* at ¶ 14. Shortly thereafter, Class Counsel engaged in multiple discussions with counsel for the Purchaser (who acquired the housing community at Starrett City on May 7, 2018) regarding the possible resolution of claims by Plaintiffs for the period beginning

on the date of Purchaser's acquisition through the date of the Preliminary Approval Order (defined below). *Id.* at ¶ 15. These negotiations ultimately culminated in agreement in principle with Purchaser to settle Plaintiffs' post-May 7, 2018 claims in the amount of $250,000 for a collective settlement on behalf of all Class Members in the amount of $4.75 million. *Id.* at ¶ 16. Over the next several months, the Parties negotiated the detailed Settlement Agreement. *See id.* at ¶¶ 23-25.

C.    **The Parties' Joint Motion for Preliminary Approval**

On May 17, 2019, the Parties filed a Joint Motion for Preliminary Approval of the Settlement. On June 27, 2019, the Court took the first step in the settlement approval process and preliminarily approved the Settlement, conditionally certified the proposed Class; appointed McLaughlin & Stern, LLP as Class Counsel; approved the proposed notice and directed that the Notice be sent to the Class Members, and set a date for the final fairness hearing (the "Preliminary Approval Order"). *See* Dkt. No. 56.

## SUMMARY OF SETTLEMENT TERMS

A.    **The Settlement Fund**

Under the Settlement Agreement, the Settling Entities have agreed to pay into a Qualified Settlement Fund the Gross Settlement Amount of $4.75 million. *See id*. Of the Gross Settlement Amount, Starrett City, Inc. shall pay $4.5 million on behalf of the Starrett Defendants and the Purchaser shall pay $250,000. *See id*.

From the Gross Settlement Amount will be deducted: (i) settlement administration fees, costs, and expenses, including but not limited to, the Settlement Claim Administrator's fees and costs, and costs of all notices; (ii) Court-approved attorneys' fees and costs for Class Counsel; (iii) Court-approved service awards to the Named Plaintiffs and the Opt-in Plaintiff; and (iv) a special reserve fund as described in Sections 1.27, 1.47, 3.1(F) and 3.4(B)(2) of the Settlement Agreement.

*See id.*  The amount remaining after these deductions, called the Net Settlement Fund, will be distributed to eligible Class Members.  *See id.*  The employer's share of payroll taxes shall be paid by the Settling Entities in addition to the Gross Settlement Amount.  *See id*.

**B.    Class Members**

Class Members are comprised of approximately 1,000 individuals consisting of: (i) all FLSA Class Members, who are current and former non-exempt hourly paid employees who worked at Starrett City during the period from April 17, 2015, through June 27, 2019 (*i.e.*, the date of the Preliminary Approval Order); and (ii) Rule 23 Class Members, who are individuals employed in New York State and who worked as non-exempt hourly paid employees at Starrett City from April 17, 2012, through the date of the Preliminary Approval Order.  *See id.*

**C.    Releases**

All Class Members who do not exclude themselves from the Settlement will release the Settling Entities and their related parties from all Released State Law Claims, which includes claims for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties.  *See id.*  All Class Members who receive and cash Settlement Checks will release the Settling Entities and their related parties from all Released Federal Law Claims, which includes all claims for any type of relief under the FLSA.  *See id.*

**D.    Allocation Formula**

Under the allocation formula, Class Members will be paid their proportionate share of the Net Settlement Fund as determined by the Settlement Claims Administrator based on the total time in which each Class Member clocked in/out before and after their shifts and/or meal breaks but

were only paid according to their scheduled hours (excluding any and all hours outside their regularly scheduled hours for which they were previously paid). *See id.*

More specifically, EmployStats created a computerized algorithm to determine each Class Member's individual damage award if the litigation were to proceed to trial and if Class Counsel was successful in obtaining a full recovery for actual damages, liquidated damages, statutory damages, interest, costs, and attorneys' fees (the "Full Recovery Amount"). *See* Shalov Dec. at ¶ 35. Each Class Member has been assigned an individual percentage amount of the Gross Settlement Amount based on the time detail reports and pay records. *See id.*; *see also* Dkt. No. 56. Each Class Member's percentage amount of the Gross Settlement Amount has been assigned to the Net Settlement Fund in order to compute the Class Member's share of the Net Settlement Fund (an "Individual Settlement Amount"). *See id.* For example, if a Class Member's percentage of the Full Recovery Amount is .25%, and the Net Distribution Amount is $3,000,000.00, then that Class Member's Individual Settlement Amount would be $7,500 (subject to the applicable tax withholdings). *See id.* The plan of allocation does not treat any Class Member better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records.

E.    **Attorneys' Fees, Costs and Service Awards**

Contemporaneously herewith and at the final fairness hearing, Class Counsel seek an award of attorneys' fees of no more than one-third of the Gross Settlement Amount for the work they performed, the risks they confronted and the result they achieved on behalf of the Class. Class Counsel will also request reimbursement of their litigation costs and expenses to be paid from the Qualified Settlement Fund. In addition, Named Plaintiffs will each apply for a $10,000 service award and Opt-in Plaintiff Mackenson Vil will apply to the Court for a $5,000 service award.

F.      **Settlement Claims Administration**

The Parties selected, and the Court approved, RG/2 Claims Administration LLC ("RG/2") as the Settlement Claims Administrator to administer the Settlement. *See* Dkt. No. 56. On August 9, 2019, RG/2 mailed the Court-approved Notices to Class Members whose names and addresses were provided by the Settling Entities. *See* Declaration of Melissa Baldwin dated September 6, 2019 ("Baldwin Dec.") at ¶ 6. RG/2 also established a website devoted to the Settlement: www.rg2claims.com/starrettcity.html. *Id.* at ¶ 8. After the Notices were mailed, RG/2 received 28 Notices returned as undeliverable. *Id.* at ¶ 11. RG/2 performed address traces for all of the undeliverable Notices, and re-mailed 22 of them to Class Members for whom new addresses were located. *Id.*

The Notices advised Class Members, among other things, of their right to object to or exclude themselves from the Settlement. *See id.*; *see also* Dkt. No. 46-2. No Class Member has objected to the Settlement, and only two Class Members have requested to be excluded from the Settlement. *Id.* at ¶¶ 12-13.

## ARGUMENT

A.      **The Settlement Class Meets the Legal Standards for Class Certification**

On June 27, 2019, this Court conditionally certified the following Classes: (1) all current and former non-exempt employees paid on an hourly basis who worked at Starrett City during the period from April 17, 2015 through June 27, 2019; and (2) all individuals who were employed in New York State and worked as non-exempt employees paid on an hourly basis at Starrett City from April 17, 2012 through June 27, 2019. *See* Dkt. No. 56. For the reasons articulated in the Joint Motion for Preliminary Approval, the Court should now grant final certification because the Settlement meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure, and because "no facts have been presented… to indicate that [the] preliminary determination [to certify

a settlement class] was incorrect." *Lizondro-Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165,

*8-9 (S.D.N.Y. Oct. 7, 2014).

**B.    The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate and Should be Approved in All Respects**

Federal Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable and adequate.  *See* Fed. R. Civ. P. 23(e).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche*

*Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether

the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Courts examine procedural and

substantive fairness in light of the "strong judicial policy in favor of settlement" of class action

suits.  *Wal-Mart Stores*, 396 F.3d at 116 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d

132, 138 (2d Cir. 1998)); *see also Spann v. AOL Time Warner Inc.*, 2005 U.S. Dist. LEXIS 10848,

*18 (S.D.N.Y. June 7, 2005) ("public policy favors settlement, especially in the case of class

actions"); 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87 (4th

ed. 2002) ("[t]he compromise of complex litigation is encouraged by the courts and favored by

public policy").

**1.    The Settlement is Procedurally Fair**

The Settlement is procedurally fair because it was reached through arm's-length

negotiations and after experienced counsel had thoroughly evaluated the merits of Plaintiffs'

claims.  *See Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, *7 (E.D.N.Y. Aug. 6,

2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of

collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *see also Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *10-11 (E.D.N.Y. Sept. 26, 2018) (same). Indeed, a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (citations omitted); *see also In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. Feb. 12, 2010). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007); *see also Westerfield v. Washington Mut. Bank*, 2009 U.S. Dist. LEXIS 54553, *4 (E.D.N.Y. June 26, 2009) ("[t]he assistance of an experienced mediator… reinforces that the Settlement Agreement is non-collusive.").

Here, the Parties engaged in sufficient discovery to explore the claims and defenses at issue in the case. In fact, Class Counsel reviewed thousands of pages of the Starrett Defendants' documents and payroll records and, prior to mediation, analyzed and compared the Starrett Defendants' timekeeping and payroll data, gathered information gleaned from its own investigation, and arrived at estimated damages figures for the Classes. *See* Shalov Dec. at ¶¶ 10, 12, 49. Class Counsel also conducted numerous and lengthy post-settlement confirmatory interviews with Class Members about the claims and defenses at issue in this case. *Id.* at ¶¶ 20, 49. Additionally, Class Counsel successfully argued against the Starrett Defendants' efforts to limit the proposed class to just those employees who utilized electronic (as opposed to paper) time keeping procedures; engaged in lengthy negotiations with regard to a "phased" discovery plan,

which was approved by the Court by Order dated November 14, 2018; and communicated with numerous Class Members regarding their work experiences at Starrett City. *Id.* at ¶¶ 7-9, 49.

Plaintiffs and the Starrett Defendants arrived at a settlement after vigorous, arms'-length negotiations conducted before an experienced third-party mediator. *Id.* at ¶¶ 11-14. Thereafter, Plaintiffs and the Purchaser engaged in multiple rounds of arms'-length negotiations to resolve Plaintiffs' claims for the period beginning on the date of Purchaser's acquisition through the date of the Preliminary Approval Order. *Id.* at ¶ 15. At all times during this process, the arm's-length negotiations involved counsel well-versed in wage and hour class action law. In the opinion of Class Counsel, the $4.75 million Settlement constitutes an outstanding result in light of the complex legal issues in the action and the profound risks and uncertainties of litigating the case to trial and overcoming inevitable appeals. Each of the Named Plaintiffs and Opt-in Plaintiff was contacted by Class Counsel and concurred with this assessment. *Id.* at ¶ 61.

For these reasons, the Settlement is procedurally fair. *See Kochilas v. Nat'l Merch. Servs.*, 2015 U.S. Dist. LEXIS 135553, *9 (E.D.N.Y. Oct. 2, 2015) (holding that the settlement was procedurally fair, reasonable, and adequate where it was "reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after extensive negotiations between the parties"); *see also Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, *14 (S.D.N.Y. Oct. 2, 2013) ("[t]hese arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.").

### 2.     The Settlement is Substantively Fair

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. *Grinnell*, 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. "All nine factors need not be satisfied. Instead, the Court looks at the totality of these factors in light of the specific circumstances involved." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 U.S. Dist. LEXIS 79679, *7 (S.D.N.Y. Aug. 6, 2010) (citations omitted). Here, all of the *Grinnell* factors either weigh in favor of final approval of the Settlement or are neutral.

### i.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs avoided the significant expense and delay of further litigation, and ensured a risk-free recovery for the Classes. *See Capilupi v. People's United Fin., Inc.*, 2018 U.S. Dist. LEXIS 167550, *3-4 (E.D.N.Y. Sept. 27, 2018). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"); *see also Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782, *16 (E.D.N.Y. Apr. 27, 2016) ("class actions, especially in the context of FLSA claims, are inherently complex"). This case is no exception, with approximately 1,000 Class Members and claims asserted under federal and state law.

As an initial matter, at the time the Parties reached the Settlement, the Starrett Defendants' motion to dismiss was pending, which disputed the viability of Plaintiffs' claims and argued, *inter alia*, that Plaintiffs' claims must be submitted to arbitration. Assuming Plaintiffs were successful

in defeating that motion, further discovery would be required to establish liability and damages, to support Plaintiffs' class certification motion and to respond to the Starrett Defendants' opposition to such motion. This discovery would include further electronic discovery; depositions of Plaintiffs, opt-ins, and the Starrett Defendants' employees, including managers who supervised Plaintiffs and opt-ins, and the Starrett Defendants' corporate representatives; and potential expert analysis of data. After completing discovery, Plaintiffs and the Starrett Defendants would likely move for summary judgment. If the Court determined that fact disputes precluded summary judgment, a fact-intensive trial would be necessary. Any judgment would likely be appealed, further extending the litigation. This Settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### ii.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

The second *Grinnell* factor "is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of the settlement." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995).

Here, after the Preliminary Approval Order was entered, Class Counsel and counsel for the Starrett Defendants and Purchaser, along with the Settlement Claims Administrator, began working on finalizing the Notice. *See* Shalov Dec. at ¶¶ 23-25. Moreover, as payroll records for a small number of hourly employees had not been produced, this information was collected and forwarded to EmployStats for analysis and input into its computer database. The Notice was disseminated to Class Members in English, Spanish, Italian, and French Creole on August 9, 2019. *See* Baldwin Dec. at ¶ 6. Among other things, the Notice contained relevant information about the nature of the lawsuit, including how the Individual Settlement Amounts would be calculated,

attorneys' fees and expenses, the proposed service awards to Named Plaintiffs and Opt-In Plaintiff, and how Class Members could exclude themselves from the Settlement or object to the Settlement. *See id.* at Exhibit A.  The Notice also included a Request For Exclusion Form for Class Members who did not wish to participate in the Settlement.  *See id.*  RG/2 also established a website devoted to the Settlement: www.rg2claims.com/starrettcity.html.  *Id.* at ¶ 8.

To ensure Class Members can evaluate the merits of the Settlement and their projected recoveries, the Class Notice also contained each employee's Individual Settlement Amount based on a hypothetical Net Distribution Amount of $3 million (that is, after deduction of requested attorneys' fees, expenses and administration costs).  *See* Shalov Dec. at ¶ 44.  Those figures show compellingly the outstanding nature of the Settlement achieved in this case, 514 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 387 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement Fund, and 98 Class Members can expect to receive more than $10,000 from the Net Settlement Fund.  *Id.*  These are meaningful sums for employees at Starrett City, many of whom are low or medium income wage earners.  Notably, subsequent to the dissemination of the Notice, Class Counsel has received and responded to nearly 100 calls from Class Members who are ecstatic about the Settlement and their anticipated individual recoveries.  *Id.* at ¶¶ 45, 56.  These calls continued on a daily basis through the filing of this motion.  *Id.* at ¶ 45.

The date for objecting to the Settlement expired on September 8, 2019.  *Id.* at ¶ 46.  Not a single Class Member objected to the Settlement or Class Counsel's fee request.  *Id.*  "[T]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 302 (E.D.N.Y. 2015); *see also Kochilas*, 2015 U.S. Dist.

LEXIS 135553 at \*13 (where no class members submitted a timely objection to the settlement or requested exclusion, "[t]his overwhelmingly favorable response recommends final approval"); *Willix v. Healthfirst*, 2011 U.S. Dist. LEXIS 21102, \*10 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class members submitted timely objections and only 2 requested exclusion).

### iii.    Discovery Has Advanced Far Enough to Allow The Parties To Resolve The Case (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery, the Parties have completed enough discovery to recommend settlement.  Indeed, this factor looks to whether counsel had an adequate appreciation of the merits of the case before negotiating.  *See In re Austrian*, 80 F. Supp. 2d at 176 ("the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement… [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."); *see also Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, \*21 (S.D.N.Y. Apr. 20, 2012) ("[t]he Court need not find that the parties have engaged in extensive discovery… it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make… an appraisal' of the Settlement") (quotation omitted).

The Parties' discovery here readily meets this standard.  As discussed, *supra*, Class Counsel received and reviewed thousands of pages of documents from the Settling Entities.  *See* Shalov Dec. at ¶¶ 10, 49.  These documents included collective bargaining agreements, management emails regarding work-related issues, and Class Member time and payroll records. *Id.*  Class Counsel also spoke with a number of Class Members regarding their work experiences at Starrett City and the manner in which they were harmed by virtue of the timekeeping policies challenged in the Litigation.  *Id.* at ¶ 49.  Further, Class Counsel consulted extensively with an

expert to assist in the analysis of the Settling Entities' payroll records and the calculation of Class Member damages. *Id.* at ¶¶ 12, 49. Additionally, Class Counsel conducted interviews of numerous employees of the Settling Entities, including, but not limited to, the Director of Human Resources and the Director of Payroll for the Starrett City Defendants and for the Purchaser. *Id.* at ¶¶ 20, 49. Accordingly, the third *Grinnell* factor favors final approval. *See Capilupi*, 2018 U.S. Dist. LEXIS 167550 at *3-4 (granting final approval where the parties exchanged payroll records and plaintiffs' counsel interviewed class members); *see also Sewell*, 2012 U.S. Dist. LEXIS 53556 at *21 (granting final approval where the parties "exchanged thousands of pages of documents and Plaintiffs' counsel has interviewed numerous class members").

### iv. Plaintiffs Would Face Substantial Risks If The Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs were confident in their case and believed it to be strong, it is subject to considerable risk. Undoubtedly, "risks are inherent in litigation." *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *23. Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, *12 (E.D.N.Y. Oct. 4, 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Id.* (quoting *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *22).

Here, as discussed, *supra*, Plaintiffs faced substantial risks as to both liability and damages if the case proceed. While Plaintiffs believe they could ultimately defeat the Starrett Defendants' motion to dismiss and subsequently prevail on a motion for class certification, this would require significant factual development. Plaintiffs would have to rebut the merits of the Starrett Defendants' arguments that Class Members were not actually working during pre- and post-shift periods; litigate whether the Starrett Defendants' alleged violations were willful; and rebut the

Starrett Defendants' arguments regarding the proper measure of damages. In addition to additional discovery, this would require "favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy." *Garcia*, 2012 U.S. Dist. LEXIS 144446 at *12 (quoting *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *30 (S.D.N.Y. Sept. 16, 2011)). Indeed, Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome at trial, and the inevitable appeals process are uncertain in terms of both outcome and duration. The Settlement alleviates this uncertainty. These factors, therefore, weigh in favor of final approval.

### v.    Maintaining The Class Through Trial Would Be Difficult (*Grinnell* Factor 6)

In addition to the risks associated with the Starrett Defendants' motion to dismiss, the risk of obtaining class certification and maintaining it through trial is also present. The Starrett Defendants would likely contest collective and class certification resulting in extensive discovery and briefing. Indeed, the Starrett Defendants repeatedly asserted throughout the discovery process their position that the Plaintiffs' proposed class/collective definition is too broad, and that Plaintiffs are not similarly situated to and cannot adequately represent all of the approximate 1,000 Class Members. If the Court granted class certification and authorized notice to Class Members, the Starrett Defendants would likely challenge that decision and seek to decertify the collective at a later date, requiring additional briefing and a possible application to the Second Circuit under Federal Rule 23(f).

Additionally, the Starrett Defendants would likely assert defenses for certain Class Members based on their particular factual circumstances. Although time-rounding cases such as this one are routinely certified and Plaintiffs disagree with these arguments, other defendants have prevailed on arguments like these. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 549-551 (2d Cir.

2010) (affirming denial of class certification based on evidence that the class members' duties varied by location). As such, there is a legitimate risk that the Court would conclude that such individualized factual inquires precludes class treatment in this case. Accordingly, this *Grinnell* factor weighs in favor of final approval.

**vi.    The Settling Entities' Ability To Withstand A Greater Judgment Is Not Determinative (*Grinnell* Factor 7)**

It is not clear whether the Settling Entities could withstand a greater judgment. However, even if they could, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at n. 9. Here, the Settlement eliminates the risk of collection because the Settling Entities were required to pay, and did pay, the full Gross Settlement Amount within ten (10) days of the Preliminary Approval Order. *See* Shalov Dec. at ¶ 32. This factor is neutral and does not preclude the Court from granting final approval.

**vii.    The Settlement Fund Is Substantial in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

The Gross Settlement Amount is substantial given the value of the claims and the litigation risks. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178. "Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also Ballinger v. Advance Magazine Publrs., Inc.*, 2014 U.S. Dist. LEXIS 179538, *7 (S.D.N.Y. Dec. 29, 2014) ("[t]he inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness") (citations omitted). "There is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at n.2; *see also Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, *34-35 (E.D.N.Y. May 22, 1990) (approving a $2.3 million class settlement where the "best possible recovery would be approximately $121 million"). Ultimately, where a settlement provides "a meaningful benefit to the Class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Karic*, 2016 U.S. Dist. LEXIS 57782 at *22 (citing *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010)).

Here, the Settlement provides far more than "a fraction of the potential recovery." *See Grinnell*, 495 F.2d at 455. To the contrary, the $4.75 million Gross Settlement Amount provides a substantial, all-cash recovery to compensate Class Members for their damages even after deducting the attorneys' fees and expenses requested by Class Counsel. By Class Counsel's estimation, the Gross Settlement Amount represents approximately 29% of Class Members' lost wages, *including* liquidated damages. *See* Shalov Dec. at ¶ 17. This is an extraordinary result by any measure and even more impressive when compared to 58.1% recovery of the alleged $8,163,668 in actual compensatory damages sustained by members of the Class. *Id.* at ¶ 18. Indeed, 514 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; 387 Class Members can expect to receive between $1,000 and $9,999 from the Net Settlement Fund, and 98 Class Members can expect to receive more than $10,000 from the Net Settlement Fund. *Id.* at ¶ 44. Accordingly, these factors favor final approval of the Settlement.

**C.    The Plan of Allocation is Fair and Reasonable**

The plan of allocation is fair, reasonable, and adequate. "'As a general rule, the adequacy of an allocation plan turns on… whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.

Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re American Banknote Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (citation omitted).

Here, under the allocation formula, Class Members will be paid their proportionate share of the Net Settlement Fund as determined by the Settlement Claims Administrator based on the total time in which each Class Member clocked in/out before and after their shifts and/or meal breaks but were only paid according to their scheduled hours (excluding any and all hours outside their regularly scheduled hours for which they were previously paid). *See* Shalov Dec. at ¶ 34. Plaintiffs' expert created a computerized algorithm to determine each Class Member's individual damage award if the Litigation were to proceed to trial and if Class Counsel was successful in obtaining a full recovery for actual damages, liquidated damages, statutory damages, interest, costs, and attorneys' fees. *Id.* at ¶ 35. Each Class Member has been assigned an individual percentage amount of the Gross Settlement Amount based on the time detail reports and pay records. *Id.* Each Class Member's percentage amount of the Gross Settlement Amount has been assigned to the Net Settlement Fund in order to compute the Class Member's Individual Settlement Amount. *Id.* For example, if a Class Member's percentage of the Full Recovery Amount is .25%, and the Net Distribution Amount is $3,000,000.00, then that Class Member's Individual Settlement Amount would be $7,500 (subject to the applicable tax withholdings). *Id.*

The plan of allocation does not treat any Class Member better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records. *Id.* at ¶ 34. All Class Members were informed of this plan of allocation in the Class Notice and none objected to it.

**D.**     <u>**Approval of the Settlement of the FLSA Class Members' Claims is Appropriate**</u>

    Plaintiffs also request that the Court approve the settlement of the FLSA Class Members' claims. Specifically, Plaintiffs have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001). Because, under the FLSA, a failure to opt-in "does not prevent [individuals] from bringing their own suits at a later date[,]" FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Lizondro-Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165 at *15-16 (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (quoting *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). "Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issue that was reached as a result of contested litigation." *Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165 at *16 (citing *Wollinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Here, because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See Lizondro-Garcia*, 2014 U.S. Dist. LEXIS 143165 at *16 (approving FLSA settlement which resulted from arms'-length negotiations resolving disputed issues).

<u>CONCLUSION</u>

    For the reasons stated herein, the Parties jointly request that the Court enter an Order (a) certifying the Classes for settlement purposes; (b) granting final approval of the Settlement; (c) entering Judgment in accordance with the Settlement Agreement; and (d) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 9, 2019

                              McLAUGHLIN & STERN, LLP

                              By: */s/ Lee S. Shalov*
                                  Lee S. Shalov
                                  Brett R. Gallaway
                              260 Madison Avenue
                              New York, New York 10016
                              Tel.: (212) 448-1100
                              Fax: (212) 448-0066
                              *Attorneys for Plaintiffs*